## HANNIBAL *v.* FAUNTLEROY.

In a suit upon city bonds, which recite that they are issued to pay its subscription, the validity of which depended on its ratification "by a majority of the taxpayers," the plaintiff offered in evidence, 1, the poll-books of an election held for that purpose and to elect city officers, for whom no person other than a taxpayer could lawfully vote, and which contain the name of every voter, with the record of his vote on the question, and show a majority of votes cast in favor of the ratification; 2, the proceedings of a meeting of the city council, whereat that fact was shown to their satisfaction by the certificate of the officers of the election, and the bonds ordered to be issued. *Held*, that the offered evidence is competent, and that the plaintiff was not bound to sustain the record by proof that each person voting was thereunto lawfully entitled.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

*Mr. Chester H. Krum*, with whom was *Mr. J. M. Krum*, for the plaintiff in error.

*Mr. James Grant* for the defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This was an action brought by Fauntleroy, the defendant in error, a citizen of Virginia, against the city of Hannibal, a

municipal corporation of Missouri, to recover the amount of principal and interest alleged to be due on certain bonds and coupons. The bonds are dated April 1, 1858, for $1,000 each, and are payable twenty years after date to A. O. Nash, auditor of said city, or bearer, at the American Exchange Bank, New York, for value received, without defalcation, with interest at the rate of ten per cent per annum, payable semi-annually, on the first day of October and April in each year, upon presentation of the annexed coupons severally, until the payment of the principal sum. They purport on their face to have been issued by the city to pay calls on subscription for stock in the Pike County Railroad, Illinois. They contain no other recitals. They were issued, it is claimed, under the authority of an act of the legislature of Missouri, passed Feb. 27, 1857, to amend the charter of the city, the third section of which reads as follows : —

"SECT. 3. Said city council shall have power to subscribe for and take stock in any railroad terminating at the city of Hannibal or upon the bank of the Mississippi River opposite to said city in the State of Illinois. But before such subscription shall be valid, it shall be ratified by a majority of the taxpayers, at a poll to be opened for that purpose."

The second section of the same act provides that "said council shall also have power to borrow on the credit of the city and to pledge the revenues and public property for the payment thereof; but a greater rate of interest than ten per cent shall not be paid on any sum borrowed, unless two-thirds of the qualified voters of said city, at polls to be opened for that purpose, shall instruct the payment of a greater rate."

It is, therefore, not denied that the bonds are binding obligations upon the municipal corporation, provided the subscription to the stock of the Pike County Railroad, in payment of which they were issued, was lawfully made ; and no question is made as to the validity of this subscription, except that it was not ratified, as is claimed, by a majority of the taxpayers, in accordance with the provisions of the third section of the amended charter.

It appears that, at a called meeting of the city council

of the city of Hannibal, held on Oct. 22, 1857, an ordinance was duly passed authorizing and directing the subscription of $100,000 stock in the Pike County Railroad, as follows : —

"Be it ordained by the city council of the city of Hannibal, as follows :—

" SECT. 1. That the mayor of the city of Hannibal be, and is hereby, authorized and directed to subscribe for and take for the city of Hannibal, one hundred thousand dollars stock in the Pike County Railroad, having its western terminus on the bank of the Mississippi River, at a point in the State of Illinois opposite the city of Hannibal, within a one-half mile of the western terminus of Suy Carty Plank Road ; said stock to be paid for in the bonds of the city of Hannibal at their par value, which bonds are to be made payable not exceeding twenty years from the date of their issue, and are to bear ten per cent interest per annum, payable semi-annually.

" SECT. 2. That the mayor be, and is hereby, directed to cause a poll to be opened in said city of Hannibal for the purpose of obtaining the ratification of the foregoing said subscription of one hundred thousand dollars stock in said Pike County Railroad by the taxpayers of said city of Hannibal, in accordance with the provisions contained in the third section of an act passed by the General Assembly of the State of Missouri, entitled ' An Act to amend the charter of the city of Hannibal,' approved February 27th, 1857.

" SECT. 3. This ordinance to take effect from and after its passage."

On the trial of the cause in the Circuit Court, the plaintiff, recognizing his obligation to prove affirmatively that the bonds in question had been issued under the authority of the law, introduced in evidence the poll-books of an election held at voting places in the three wards of the city, on the first Monday (the second day) of November, 1857, for the purpose of electing a mayor, marshal, recorder, and attorney for said city, three councilmen for each ward, and for the ratification of the subscription of $100,000 of stock in the Pike County Railroad. These poll-books contain the name of every voter, with a record of his vote, whether for or against ratification, and are authenticated by the certificate of the

judges and clerks of the election, stating the result, and specifying in their return, under the head "for ratifying the subscription of $100,000 stock in Pike Co. Railroad," the number of votes cast in favor of and against the ratification. The result as shown by these poll-books, in the aggregate, was that three hundred and sixteen votes were cast in favor of, and thirty-two against, the ratification. At a called meeting of the city council of the city, on Nov. 4, 1857, it is recorded, that the clerk read to the city council the certificate of the mayor and one judge of the election from each ward in the city, whereby it was shown to the satisfaction of the council that at the municipal election held in the several wards on Monday, Nov. 2, 1857, certain persons named therein had been duly elected to the several offices therein specified, and thereupon it was resolved that certificates be made out and delivered to the officers elect, and at the conclusion of the entry upon the record there is the statement, — "for ratification, three hundred and sixteen votes; against, thirty-two votes."

At a regular meeting of the city council on Dec. 7, 1857, it is recorded, that, "on motion of Mr. Dowling, resolved, that the mayor be, and he is hereby, authorized and instructed to issue the bonds of the city to the Pike County Railroad, in accordance with calls on the capital stock made by order of the board of directors, and in pursuance of an ordinance approved October 22d, 1857."

The stock subscribed for was duly issued to the city, and is still held by it; and the corporation has continuously exercised the privileges of a stockholder, though it is admitted that the stock has no pecuniary value.

It was also proven that, in various ways, prior to the institution of this suit, the city had admitted her liability upon these bonds by making arrangements for the payment of coupons as they fell due, receiving them in payment of taxes, permitting judgment to be rendered on account of unpaid coupons, once by consent and once by default; but the city objected to the whole evidence on the ground that it was insufficient to establish such liability, because it failed to show a ratification of the subscription by a vote of a majority of taxpayers at an election called and held for that purpose.

The answer to this objection, however, is found in the provisions of art. 1, sect. 10, of the charter of 1851, of the city (Laws of Missouri, 1851, p. 327), admitted to have been in force at the time, which defined the qualification of voters as follows: —

"SECT. 10. All free white male citizens, who have arrived at the full age of twenty-one years, and who shall be entitled to vote for State officers, and who shall have resided within the city limits at least six months next preceding any election, and, moreover, who shall have paid a city tax or any city license according to ordinance, shall be eligible, and entitled to vote at any ward or city election for officers of the city."

It thus appears that no person could lawfully vote at the election held Nov. 2, 1857, for city officers, except taxpayers; and assuming that the list of names contained in the pollbooks as having voted for or against the ratification of the subscription to the stock in the Pike County Railroad are those of the same persons who voted for city officers, it follows that they must all have been taxpayers, on the presumption, which certainly must be applied, that they were all legally entitled to vote.

It is argued that the legislature used the word "taxpayers," in the third section of the act of 1857, in a sense designedly differing from that of "qualified voters," in the second section, who are to decide upon the question of the rate of interest on money borrowed in excess of the ten per cent per annum. We see no evidence, however, of such an intention. On the contrary, that supposition would necessitate the conclusion that by the word "taxpayers" the legislature meant to include persons not otherwise qualified to vote; for example, not free white male citizens, minors, women, married and unmarried; and non-residents. The reasonable interpretation is, that the question of ratifying the subscription should be submitted to the vote of the taxpayers of the city, having the qualification otherwise of lawful voters; and this included, as we have seen, all the qualified voters of the city.

To allow the present objection to prevail would require the plaintiff, not only to show that the persons voting to ratify the

stock subscription were all taxpayers, but also that they had all the other requisite qualifications of persons entitled by law to vote. In our opinion, the law imposes no such unreasonable burden upon the owner of such bonds. He is bound to show, in the absence of recitals that prevent its denial, that the corporation issued them, in the exercise of a power conferred by law; and where that can arise only in consequence of the performance of a condition precedent, such as the result of an election by a public vote, he has the burden of proof to show the fact. That fact, as in the present case, is fully proven by an exhibition of the record, which shows on its face the result claimed. He is not bound to sustain the truth of the record, as if it were the case of a contested election, and prove that the majority, on the existence of which his rights rest, consisted of persons, all of whom possessed the qualification of voters. Whether each voter was lawfully such, was a question in the first place, in the present case, for the judges of the election, who were appointed under the law, for the express purpose of receiving and deciding upon their votes; and, in the second place, for the city council, to whom the official return of the election and of its result was made, as required, and who were authorized to act upon that result as certified to and verified by themselves, in the very matter of consummating the subscription, which was the subject of the vote. It would be impracticable for any purchaser of the bond, put on inquiry, as to the authority of the city council to make the issue of the bonds in question, to make inquisition into the facts of the election, beyond these returns and records; and it is but reasonable to permit him safely to rest his rights upon them, as they appear. They show the fact, that the subscription to the railroad stock was ratified by a majority of the voters, presumed to be qualified to vote, because permitted by the authorities controlling the election to do so, at an election held for the purpose, among other things, of deciding that question; and that fact constitutes the condition on which the authority to issue the bonds, by law, depends, and is the guarantee of their validity.

*Judgment affirmed.*