[Civil No. 646.    Filed March 15, 1899.]

[56 Pac. 876.]

ANDREW CRONLY, on behalf of himself and all other taxpayers of the City of Tucson, Plaintiffs and Appellants, v. CITY OF TUCSON et al., Defendants and Appellees.

1. ELECTIONS—QUALIFICATION OF VOTER—REV. STATS. U. S. 1878, SEC. 1860 (ORGANIC ACT), CONSTRUED — POWER OF LEGISLATURE — WOMAN'S SUFFRAGE.—Subject to the restrictions of section 1860, *supra,* that the right to vote should be limited to citizens of the United States, or to those who have declared their intention to become such, above the age of twenty-one years, the legislature of this territory has the power to confer the elective franchise upon females.

2. SAME—SAME—LAWS ARIZ. 1897, ACT No. 76, SEC. 2, VOID AS IN CONFLICT WITH REV. STATS. U. S. 1878, SEC. 1860 (ORGANIC ACT). —The statute, *supra,* by its terms conferring the right to vote at municipal elections upon all taxpayers, male and female, without regard to age or citizenship, is in conflict with section 1860, *supra,* and is void.

3. SAME—SAME—SAME—VOID FOR AMBIGUITY AND UNCERTAINTY.—The statute, *supra,* providing that "every taxpayer shall be entitled to vote" at any city election, may mean every resident taxpayer, or every taxpayer without regard to residence within the city; again, the language used may convey the meaning that the taxpayer must be one paying taxes within the city, or it may be read to include a taxpayer whose taxable property is without the limits of the city; and such is the uncertainty and ambiguity in the language used that it is void.

4. STATUTORY CONSTRUCTION—CONSTITUTIONAL LAW —AMBIGUITY — UNCERTAINTY.—In construing statutes in part unconstitutional, the rule is, that whenever, after striking out unconstitutional portions, that which remains is so ambiguous in its meaning that the legislative intent cannot be with reasonable certainty ascertained, the whole act must fall.

5. SAME—ELECTIONS—MUNICIPAL BONDS—ACT OF CONGRESS OF MARCH
4, 1898, CONSTRUED—TWO THIRDS OF QUALIFIED VOTERS INTER-
PRETED.—In the statute, *supra,* providing for the issuance of bonds
for municipal purposes when authorized by the affirmative vote of
two thirds of the qualified voters, cast at an election to be held as
therein specified, the proper construction of the term "two thirds
of the qualified voters" is not two thirds of those qualified to vote,
but two thirds of those qualified and actually voting.

APPEAL from a judgment of the District Court of the
First Judicial District in and for the County of Pima. George
R. Davis, Judge. Affirmed.

The facts are stated in the opinion.

S. M. Franklin, for Appellants.

C. W. Wright, for Appellees.

SLOAN, J.—Appellant, Andrew Cronly, on behalf of him-
self and other taxpayers of the city of Tucson similarly sit-
uated, brought suit in the court below against the mayor and
common council of the city of Tucson to restrain the latter
from issuing bonds of the city for the purpose of constructing
a water and sewerage system. By the provisions of the act of
Congress of March 4, 1898, any city in any of the territories
having a *bona fide* population of not less than one thousand
persons, is authorized to issue bonds "for sanitary and health
purposes, the construction of sewers, waterworks and the
improvement of streets." It was provided in the act that
before the issuance of such bonds "the mayor and common
council of said chartered municipal corporation shall cause
an election to be held in such city or town, and the mayor
and common council of such municipal corporation shall cause
to be published in a newspaper of general circulation, pub-
lished in such city or town, a notice of the time and place or
places of holding such election. Such notice shall be given
at least thirty days before such election. On the question of
the issuance of said bonds, no person shall be qualified to
vote except he be in all respects a qualified elector and owner
of real or personal property subject to taxation within the
municipality. In case two thirds of the qualified voters, as
above described, shall vote affirmatively for the issuance of

said bonds, then the mayor and common council shall issue the same, and not otherwise." In pursuance of said act, on May 5, 1898, an election was held in the city of Tucson for the purpose of determining the question whether or not bonds to the amount of one hundred thousand dollars for the purpose of constructing sewers and waterworks for said city should be issued. At this election more than two thirds of the votes cast were in favor of the issuance of the bonds. The complaint attacks the validity of this election upon the ground that female taxpayers qualified to vote at said election were by the election officers denied the right, and prevented from voting, and that there were sufficient of these to have changed the result of the election, had they been permitted to exercise their right to vote thereat. It was also charged in the complaint, as an additional ground for enjoining the issuing of bonds, that there were in the city of Tucson at the time of the election over eight hundred electors qualified to vote on the question submitted; that of these but two hundred and thirty actually voted, one hundred and ninety-six having voted for, and twenty-eight against, the issuing of said bonds, and six having cast blank ballots; that, therefore, "two thirds of the qualified voters" did not vote affirmatively for the issuance of the bonds. The complaint was held bad on demurrer, the trial court finding that neither of the grounds stated in the complaint constituted a valid objection to the issuance of said bonds. It was contended by appellant that the trial court erred in sustaining the demurrer, and that upon both of the alleged grounds the court should have held the bond election void.

Upon the first point, appellant relied upon the second section of act No. 76 of the Laws of 1897, as conferring upon female taxpayers the right to vote at all municipal elections. Said section reads as follows: "At any city election every taxpayer shall be entitled to vote without distinction of sex, but nothing herein shall be considered as abridging the right of elective franchises possessed by any person." The limitation prescribed by the organic law upon the power of the legislature to grant the elective franchise is found in section 1860 of the Revised Statutes of the United States. This section, in so far as it applies to the subject we are now considering, reads as follows: "At all subsequent elections in any territory here-

after organized by Congress, as' well as other elections in territories already organized, the qualifications of voters and of holding office shall be such as may be prescribed by the legislative assembly of each territory, subject nevertheless to the following restrictions on the power of the legislative assembly, namely: First. The right of suffrage and of holding office shall be exercised only by citizens of the United States above the age of twenty-one years and by those above that age who have declared, on oath before a competent court of record, their intention to become such, and have taken an oath to support the constitution and government of the United States." The supreme court of the United States, in *Minor* v. *Happersett,* 21 Wall. 162, has held that the word "citizen," as used in the constitution and laws of the United States, has uniformly conveyed the idea of membership of a nation, and nothing more, and hence includes either sex alike. The limitation placed by the first subdivision of said section 1860 being expressed by the term "citizens of the United States," it is clearly, then, within the power of the legislature to confer the elective franchise upon females over the age of twenty-one years, and who are citizens, either by birth or naturalization. The act of the legislature above referred to, however, by its terms attempts to confer the right to vote at municipal elections upon all taxpayers, male and female, without regard to age or citizenship, and therefore clearly transcends the power of the legislature as limited by the organic law. Even were the act not objectionable in this regard, it is doubtful if effect could be given it, because of its ambiguity and uncertainty. The language "every taxpayer shall be entitled to vote" may mean every resident taxpayer, or every taxpayer, without regard to residence within the city. Again, the language used may convey the meaning that the taxpayer must be one paying taxes within the city, or it may be read to include a taxpayer whose taxable property is without the limits of the city, and who therefore pays no city taxes. So, therefore, if, under any rule of statutory construction, we could give effect to section 2 of said act No. 76 of the Laws of 1897, to the extent that it does not violate the organic act above referred to with respect to age and citizenship, yet in doing this such is the uncertainty and ambiguity in the language used that we could not be certain that the legislative intent

was being thus carried out in its entirety. In construing statutes in part unconstitutional, the rule is, that whenever, after striking out unconstitutional portions, that which remains is so ambiguous in its meaning that the legislative intent cannot be with reasonable certainty ascertained, the whole act must fall. We therefore hold said section 2 of said act No. 76 of the Laws of 1897, in its entirety, to be inoperative and void. This disposes of the first question presented.

The question whether at the election the issuance of the bonds was assented to by a sufficient number of voters to authorize the issuance of the bonds under the requirements of the congressional act referred to turns upon the construction of the term "two thirds of the qualified voters.as above described," as this language was used in said act. There is a clear distinction between an elector and a voter. The former is one who legally has the right to vote, and the latter is one who not only possesses the right, but who does actually vote. *Sanford* v. *Prentice,* 28 Wis. 362. In *Carroll Co.* v. *Smith,* 111 U. S. 556, 4 Sup. Ct. 539, the supreme court, in construing the term "qualified voters" as used in the Mississippi constitution, said that these words "must be taken to mean, not those qualified and entitled to vote, but those qualified and actually voting. In that connection, a voter is one who votes, not one who, although qualified to vote, does not vote." That Congress recognized in the act distinction between the words "elector" and "voter" we think is apparent from the fact that in the preceding sentence to the one containing the phrase under consideration the former word is used in its precise sense. It is contended by counsel for appellant that the phrase "as above described" enlarges the meaning of the words "two thirds of the qualified voters" so as to give them the meaning of two thirds of those qualified to vote. We think a simpler and more grammatical method of arriving at the meaning of the phrase would be to transpose the word "qualified" so as to make the sentence read, "In case two thirds of the voters, qualified as above described, vote affirmatively," etc. In this way we do no violence to the structural arrangement of the words, and yet adhere to the exact meaning of the language used. Applying this construction of the congressional act to the facts as stated in the complaint, and we find that the issuance of the bonds in question was au-

thorized by the affirmative votes of more than "two thirds of the qualified voters, as above described," of the city of Tucson. We find no error in the ruling of the court upon the demurrer, and the judgment is therefore affirmed.

Street, C. J., and Doan, J., concur.