[Civil No. 1142.   Filed April 2, 1910.]

[108 Pac. 482.]

C. W. HICKS, as County Treasurer of Cochise County, and C. J. McCABE, J. J. BOWEN and J. SCHEERER, Members of the Board of Supervisors of Cochise County, Defendants and Appellants, v. J. G. KRIGBAUM, Plaintiff, and J. M. O'CONNELL, Intervener, Appellees.

1. STATUTES—CONSTRUCTION.—The court in construing a statute should aim to give it a sensible construction, and such as will effectuate the legislative intent, and, if possible, avoid an absurd conclusion, and avoid making the statute invalid.

SAME—BONDS—ELECTIONS—QUALIFIED VOTERS—"TAXPAYER OF THE DISTRICT."—Civil Code of 1901, paragraph 2182, authorizing in any school district the submission to the "taxpayers of the district" the question of the issuance of bonds, when read, as it must be, in connection with paragraph 2185, providing that the election shall be held, except as otherwise provided in the title, in conformity with the general election laws, and in connection with paragraph 2186, providing that the money for the redemption of the bonds shall be raised by taxation on the taxable property in the district, and in connection with paragraph 2176, making every adult person, who is a citizen of the United States, and who has been a resident of a school district for thirty days, and who is a parent or guardian of a child of school age residing in the district, or who has paid a tax during the preceding year, entitled to vote at any school district election, etc., is not ambiguous and uncertain for failing to provide whether taxpayers include only residents of the district, or nonresidents who are taxpayers, and the persons qualified to vote at such an election are those possessing the qualifications prescribed in paragraph 2176, and the phrase "taxpayer of the district" is limited to those who pay taxes on property within the district, and the paragraph so construed is not in conflict with the organic act (U. S. Rev. Stats. 1878, sec. 1860), relating to the qualifications of voters.

3. SAME—NOTICE OF ELECTION—STATUTORY REQUIREMENTS.—A substantial compliance with the statute prescribing the notice of an election is all that is required.

4. SAME — ELECTIONS — NOTICE — SUFFICIENCY.—Where notices of an election in a school district were posted in three public places in the district, and by publication once a week for three weeks in a newspaper, there was a substantial compliance with Civil Code of 1901, paragraph 2183, providing that an election shall be called

by posting notices in three public places, and by publicati·n in a newspaper not less than once a week for three successive. weeks; and the fact that there was a defective publication in ⌐nother newspaper did not affect the validity of the election.

5. SAME—SAME—STATUTES.—Civil Code of 1901, paragraph 2184, authorizing the board of supervisors to give notice of a school district bond election, which notice shall contain the hours during the day, not less than six, in which the polls will be open, authorizes the board to designate the hours during the day on which the election shall be held, without regard to the general election laws, or to the law relating to the elections of school trustees.

6. PLEADING—CONSTRUCTION OF ALLEGATIONS—"MORE THAN ONE."—An allegation, in a pleading contesting the validity of an election in a school district, authorizing the issuance of bonds, that "more than one" person voted in favor of the bonds who was not a taxpayer of the district, is tantamount to an allegation that two votes were cast by persons who were not taxpayers of the district.

7. ELECTIONS—"VOTES CAST."—Blank ballots are not "votes cast."

8. SAME—CONTESTS—SPOILED VOTES.—A complaint, in a suit to contest the validity of a school district election, authorizing the issuance of bonds, which alleges the number of votes cast, of which four were "spoiled," requires the deduction of the spoiled ballots in determining the number of votes cast for and against the issuance of bonds, for the word "spoiled" in the complaint must be construed in the light of Civil Code of 1901, paragraph 2340, providing that spoiled ballots returned by a voter shall be canceled.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for Cochise County. Fletcher M. Doan, Judge. Reversed.

The facts are stated in the opinion.

J. S. Williams and Attorney General, for Appellants.

Neale & Sutter and J. M. O'Connell, for Appellees.

LEWIS, J.—This is an appeal from a judgment entered in favor of the plaintiff and the intervener, joined as appellees, against the defendants and appellants, enjoining and restraining the defendant C. W. Hicks, as treasurer of Cochise county, from delivering certain bonds of school district No. 2 within said county, in the aggregate sum of $92,000, to the purchaser thereof, and enjoining and restraining the defendants C. J. McCabe, J. J. Bowen, and J. Scheerer, members of the board of supervisors of said county, from authorizing such delivery or proceeding further with the issuance, sale, or delivery of said bonds, and from the further

levy if any taxes for the payment of the interest or redemp-
tion of said bonds, or any part thereof, and further decreeing
said bonds void. J. G. Krigbaum, one of the appellees and
a taxpayer of school district No. 2, commenced this action
in the court below by his complaint, praying for the relief
subsequently granted. Thereafter J. M. O'Connell, also a
taxpayer of the district, upon leave granted filed his com-
plaint in intervention, praying for similar relief. To these
complaints the defendants interposed general demurrers,
which demurrers were by the trial court overruled, and, the
defendants electing to stand thereon, judgment was duly en-
tered in favor of the plaintiff and intervener and against the
defendants. The appellants assign error in the overruling of
the general demurrers to the complaint, and to the petition
in intervention, and error in rendering judgment in favor
of the complainant and intervener.

The most important question presented is the validity of
paragraph 2182 of the Revised Statutes of 1901, under which
the school bond election at which these bonds were authorized
was held. It reads: ''Sec. 2182 (sec. 53)'. The board of
trustees of any school district, may, when in their judgment
it is advisable, and must upon petition of a majority of the
heads of families residing in the district, call an election and
submit to the taxpayers of the district whether the bonds
of such district shall be issued and sold for the purpose of
raising money for purchasing or leasing school lots, and for
building one or more school-houses, and supplying the same
with furniture, necessary apparatus, and improving the
grounds, and for liquidating any indebtedness already in-
curred for such purposes.'' Appellees contend that this
statute is void for the reason that, by the use of the phrase
''taxpayers of the district,'' it permits the submission of the
question to persons not qualified to vote under the organic
act (U. S. Rev. Stats. 1878, sec. 1860), irrespective of age,
residence, or citizenship, and for the further reason that it
is ambiguous and uncertain, in that it does not appear whether
taxpayers include only residents of the district, or whether it
includes nonresidents who are taxpayers of the district, or
whether it includes residents of the district who pay taxes
on property outside the district.

If a meaning involving the conflict, as well as the absurd-
ities and ambiguities thus suggested, must be adopted, then

the law is void. We should, however, hesitate before accepting such an interpretation, and endeavor to discover an alternative consistent with the organic act and in itself reasonable. "It must not be lost sight of that the attitude of courts is not one of hostility to acts whose constitutionality is attacked. On the contrary, all the presumptions are in their favor, and courts are not to be astute in finding or sustaining objections." *In re Sugar Notch Borough*, 192 Pa. 353, 43 Atl. 985. "Where any particular construction which is given to an act leads to gross injustice or absurdity, it may generally be said that there is fault in the construction, and that such an end was never intended or suspected by the framers of the act." Peckham, J. (dissenting), in *People* v. *Board etc. of Onondaga County*, 129 N. Y. 395, 445, 29 N. E. 327, 14 L. R. A. 624. "Nothing is better settled than that statutes should receive sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *Lau Ow Bew* v. *United States*, 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340, and cases there cited. "Where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature to avoid such conclusion." *Commonwealth* v. *Kimball*, 24 Pick. (Mass.) 366, 370; 1 Blackstone's Commentaries, 91. "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law, in such cases, should prevail over the letter." *United States* v. *Kirby*, 74 U. S. 482, 19 L. Ed. 278. "Such construction ought to be put upon a statute as may best answer the intention which the makers had in view. . . . The intention . . . is sometimes to be collected from the cause or necessity of making a statute; at other times, from other circumstances. Whenever this can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contrary to the letter of the statute. . . . A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter.

. . . A thing which is within the letter of a statute is not within the statute, unless it be within the intention of the makers.'' Bacon's Abridgment, Statute, 1, 5, and authorities there cited; *People* v. *Insurance Co.,* 15 Johns. (N. Y.) 358, 380, 381, 8 Am. Dec. 243; *Riggs* v. *Palmer,* 115 N. Y. 506, 509–511, 12 Am. St. Rep. 819, 22 N. E. 188, 5 L. R. A. 340; *State* v. *Boyd,* 2 Gill & J. 365, 374; *Chesapeake & Ohio Canal Co.* v. *Baltimore & O. R. Co.,* 4 Gill & J. 1, 152; *City of Baltimore* v. *Root,* 8 Md. 95, 105, 63 Am. Dec. 696; *New England Car Spring Co.* v. *Baltimore & O. R. Co.,* 11 Md. 81, 90, 69 Am. Dec. 181; *Oates* v. *Bank,* 100 U. S. 239, 244, 25 L. Ed. 580. ''A rigid and literal reading would in many cases defeat the very object of the statute. . . . Every statute ought to be expounded, not according to the letter, but according to the meaning. . . . And the intention is to govern, although such construction may not in all respects agree with the letter of the statute. The reason and object of a statute are a clue to its meaning, and the spirit of the law and the intentions of its makers are diligently to be sought after, and the letter must bend to these.'' *Tracy* v. *Railroad Co.,* 38 N. Y. 433, 437, 98 Am. Dec. 54; *Rutledge* v. *Crawford,* 91 Cal. 526, 533, 25 Am. St. Rep. 212, 27 Pac. 779, 13 L. R. A. 761; *In re Opinion of the Justices* (1891), 66 N. H. 629, 33 Atl. 1076. ''In the construction of a statute, it is the intent and purpose of the law, not the letter, that must control, and the whole statute must be considered.'' *Leibes* v. *Steffy,* 4 Ariz. 11, 32 Pac. 261.

Paragraph 2182, the one in question, occurs in title 19 of the Revised Statutes, treating the subject ''Education.'' Paragraph 2183 provides the method of the calling of the bond election. Paragraph 2184 provides the form of notice of such election. Paragraph 2185 provides: ''Such election shall be held, except as otherwise provided in this title, in conformity with the general election laws of the territory of Arizona.'' Conceding for the moment, that paragraph 2182 is in terms in conflict with the organic act, and so ambiguous and uncertain as to render the law void, we here have other matter which must be looked to in placing upon it a true construction. We have a right, in fact it is our duty, to read into the paragraph such other portions of the act as properly explain and qualify it. If by so doing the general term ''taxpayers of

the district" be limited so as to free it from the intrinsic absurdity and ambiguity suggested, and to harmonize it with the requirements of the organic act, it is then a valid statute. Reading paragraph 2185 in connection with paragraph 2182, we are of the opinion that it furnishes a reference to other provisions of the statutes limiting and defining the expression "taxpayers of the district." The words "except as otherwise provided in this title," in paragraph 2185, exclude the application of the general election laws as the test of the qualification of voters at a schoool bond election. Paragraph 2176, title 19, restricts the general expression "taxpayers of the district." Paragraph 2176, in conjunction with paragraph 2182, prescribes the qualifications of voters at a school bond election. Thus interpreted, paragraph 2182 is not in conflict with the organic act. Nor have we in so determining lost sight of the argument of the appellees, to the effect that paragraph 2176 occurs in those sections of the title which particularly relate to the election of school trustees. A reading of the section discloses that the qualifications therein laid down are not merely for elections at which school trustees are to be chosen, but for any school district election.

For the reasons already stated, the expression "taxpayers of the district" in paragraph 2182 is not ambiguous and uncertain in that it does not appear whether it includes only residents of the district or whether it includes nonresidents who are taxpayers of the district. There remains the suggestion that, even so interpreted, it is ambiguous in that it may mean a taxpayer residing in the district who pays taxes upon property within the district, or one who pays upon property without the district. We are of the opinion, in view of the provisions of paragraph 2186, providing that the money for the redemption of said bonds and the payment of interest thereon shall be raised by taxation upon the taxable property in said district, that both the legislative intent and a reasonable construction require us to read the phrase to mean those who pay taxes upon property within the school district.

The case of *Cronly v. City of Tucson,* 6 Ariz. 235, 56 Pac. 876, is relied upon by appellees. In that case this court had under consideration section 2, Act No. 76, Laws of Arizona of 1897, which reads: "At any city election, every taxpayer shall be entitled to vote, without distinction of sex, but nothing

herein shall be considered as abridging the right of elective franchises possessed by any person.'' A reading of the entire act discloses that section 2 is nowhere aided, construed, or limited by reference either to other portions thereof, or to other laws of the territory. Nor can there be an implied limitation upon the term used without making the section meaningless and inoperative. The decision holding this section invalid as in conflict with the organic act is correct, and is distinguished from the case at bar. For the foregoing reasons, and upon the following authority, we hold that paragraph 2182 of the Revised Statutes of 1901 is valid: *Walnut* v. *Wade,* 103 U. S. 683, 26 L. Ed. 526; *Hannibal* v. *Fauntleroy,* 105 U. S. 408, 26 L. Ed. 1103; *Elkin* v. *Deshler,* 25 N. J. L. (1 Dutch.) 177.

Our attention is next called to the insufficiency of the publication of the notice of election. Paragraph 2183 of the Revised Statutes of 1901 provides: ''Such election must be called by posting notices signed by the board, in three of the most public places in the district not less than twenty days before the election; and if there is a newspaper published in the county, by publishing such notice therein, not less than once a week for three successive weeks.'' The order of the board of trustees required ''that notices of holding said election be given by posting in three of the most public places in said district No. 2 and by publishing at least once a week for three successive weeks, beginning April 4, 1908, in the 'Review' and 'Miner,' daily newspapers published in the city of Bisbee.'' It is conceded that the posting was sufficient. It is also conceded that there was a sufficient publication in the ''Miner.'' The publication in the ''Review'' was insufficient. ''It is not an unusual provision that notice of a coming election shall be published in one or more newspapers for a certain time before election day. The sole purpose of this being to warn the electors that an election is to be held, it is generally held that a substantial compliance with the statute is all that is required.'' 15 Cyc. 324. We hold that the election was not vitiated by the irregular publication in the ''Bisbee Review''; publication in one newspaper being a sufficient compliance with the statute. *Jordon* v. *Hayne,* 36 Iowa, 9; *Waycross* v. *Youmans,* 85 Ga. 708, 11 S. E. 865.

The appellees further contend that the election is invalid for the reason that the trustees in their notice of election specified that the polls should remain open from 9 o'clock A. M. to 5 o'clock P. M. They urge that paragraph 2185 of the Revised Statutes of Arizona, relating to elections for issuance of bonds, provides: "Such election shall be held, except as otherwise provided in this title, in conformity with the general election laws of the territory of Arizona," and that the hours fixed by the board were neither in conformity with the hours specified in the general election law (paragraph 2354), nor in conformity with paragraph 2174, providing for elections of school trustees. Paragraph 2184 of the statute relating to school bond elections expressly authorizes the board of trustees to give notice of such election, and in subdivision 3 thereof provides that said notice shall contain "the hours during the day, not less than six, in which the polls will be open." We are of the opinion that under this statute the board may designate the hours during which the election shall be held, without regard to the general election laws, or to the law relating to the election of school trustees.

There remains for our consideration the question as to whether or not there are sufficient allegations in the complaint and petition in intervention to show that less than two-thirds of the votes cast at the said bond election were in favor of issuing such bonds. The allegations in the complaint and petition in intervention are substantially the same. The complaint alleges that thereafter the return of said election having been made, the said board of trustees met and canvassed said returns, and it appeared therefrom that 427 votes had been cast at said election with the following results: Spoiled, 4 votes; blank, 2 votes; bonds, yes, 285 votes; bonds, no, 136 votes. That at said election more than one person voted in favor of the issuance of said bonds who was not a taxpayer of said school district No. 2. We agree with the contention of the appellants that the latter allegation is tantamount to an allegation that two votes were cast by persons who were not taxpayers of the district. Counsel have argued the question as to the proper meaning of the words "votes cast," and as to whether or not illegal votes and votes which were unintelligible, or marked in such manner as to subject them to rejection should be included in the aggregate and considered

as votes cast. We do not find it necessary to decide this question. The allegation of the complaint is that four votes are "spoiled." We must construe the expression "spoiled," as used in the complaint, in the light of the provision of paragraph 2340 of the general election law, which provides: "No person shall take or remove any ballot from the polling place before the close of the polls. If any voter spoil a ballot, he may successively obtain others, one at a time, not exceeding five in all, upon returning each spoiled one. The ballots thus returned shall be immediately canceled, and, together with those not distributed to the voters, shall be reserved and shall be secured in sealed packages and returned to the clerks from whom originally received." It is conceded by counsel upon both sides that the two blank ballots should not be considered as votes cast, they being in no sense the expression of the will of an elector. We must also deduct the four spoiled ballots. The number of votes cast in favor of the bonds exceed, after the rejection of the two illegal votes alleged, more than two-thirds of the votes cast at such election.

The judgment of the trial court is reversed, and the cause is remanded, with instructions to sustain the demurrers to the complaint and petition in intervention, with leave to amend within such time as the trial court may determine.

KENT, C. J., and CAMPBELL and DOE, JJ., concur.