THE STATE EX REL. JOHN J. CARROLL v. CHARLES U. BECKER, Secretary of State.—45 S. W. (2d) 533.

Court en Banc, January 4, 1932.

*Hyman G. Stein* for relator.

502

*Stratton Shartel,* Attorney-General, and *Ray Weightman,* Assistant Attorney-General; *L. Cunningham* of counsel.

WHITE, J.—A proceeding by mandamus to compel the Secretary of State to receive and file the relator's declaration of his candidacy for Congress of the United States. The petition recites portions of the Act of Congress, 1929, providing for the fifteenth and subsequent decennial censuses, and authorizing the President to transmit to each state a message designating the number of members of Congress apportioned to such state, in accordance with such census. It sets out a message of the President to Congress in pursuance of Section 22 (a) of that act, stating that Missouri is entitled to thirteen representatives in Congress; sets out a bill introduced in the Fifty-sixth General Assembly of the State of Missouri redistricting the State into thirteen congressional districts, the Tenth District thereof comprising certain wards and precincts in the city of St. Louis; that said bill duly passed the Senate and the House and was disapproved by the Governor in a veto message.

The relator, claiming that the redistricting of the State was authoritatively complete without the Governor's approval, sought to file his declaration as a candidate for the nomination on the Democratic ticket for Congressman from the said Tenth District, and the respondent Secretary of State refused to receive or file his declaration.

The above facts are admitted by respondent's return.

The case is submitted on relator's motion for judgment on the pleadings.

I. The relator asserts the validity of the redistricting act and his right to file as a candidate for the nomination on the Democratic ticket from that district, under Section 4, Article I, of the Constitution of the United States, as follows:

"The times, places and manner of holding elections for Representatives shall be prescribed in each State by the Legislature thereof, but the Congress may at any time, by law, make or alter such regulations."

The point made by relator is that the word "legislature" in that section means the members comprising the legislative body acting in a ministerial capacity and does not mean the law-making power of the State, which includes the Governor as well as the legislative body. It is pointed out in the argument that the word "legislature" occurs many times in the Federal Constitution and in some of them, obviously from the context, it has the restricted meaning claimed for it here. Section 3, Article I, of the Federal Constitution provides that the senators of the United States in each state shall be "chosen" by the legislature thereof. Article V of the Constitution provides that an amendment to the Constitution shall be "ratified by the legislature of three-fourths of the several states." Those are instances where the word "legislature" does not mean the law-making power of the State. The election of a United States senator is merely by a vote; no law is enacted. Ratifying an amendment to the Federal Constitution likewise is a voted approval by the legislature; it is not the discharge of a law-making function. It is a ministerial act commanded by the United States Constitution. Relator claims that the word "legislature" in Section 4, Article I, has the same meaning.

Three cases recently have been determined in as many different states construing the word "legislature" as used in that section: State of Minnesota ex rel. Smiley v. Holm, decided October 9, 1931, 184 Minn. 228, 238 N. W. 494; In re Application of Koenig et al. v. Flynn, Secretary of State, Supreme Court of New York 1931, 234 App. Div. 139, 254 N. Y. Supp. 339, 179 N. E. 705; State ex rel. Schrader v. Polley, Secretary of State, 26 S. D. 5.

In the Minnesota case it was held that an act of the legislature in that State, although vetoed by the Governor, was effective to redistrict the State into congressional districts on the ground that the word "legislature" as used in Section 4, Article I, of the Federal Constitution means, merely the legislative body and does not mean the law-making power of the State.

In the Dakota case and the New York case it was held that the word "legislature" as used in Section 4, Article I, means the law-making power of the State. In the Minnesota case a memorandum by the judge of the district court and the opinion of the Supreme Court upon appeal are set out at length in a pamphlet filed here. The matter was argued at length with much plausibility, although there was a dissenting opinion.

Section 2, Article I, of the Federal Constitution provides for an apportionment of Representatives among the several states, and that provision was modified by Section 2 of Amendment XIV adopted in 1866, which required Representatives to be apportioned among the several states "according to their respective numbers counting

the whole number of persons in each state, including Indians not taxed.''

A Congressional apportionment has followed each decennial census beginning with that of 1790 until that of 1910. The act following the first census allowed a Representative in each state for every thirty-three thousand persons, making 105 Representatives in all. The population basis of representation was increased from time to time and in 1830 a Representative was allowed for each 47,000 persons. Notwithstanding the increase of population for each Representative the number of members of Congress increased very rapidly and in 1860 it was thought necessary to limit the number of Representatives to 241. That limit was extended from census to census until the Act of 1911, following the census of 1910, limited the number to 433, and provided that if the territories of Arizona and New Mexico should become states each would be entitled to one Representative, which made the total 435 when those states came in. No reapportionment act followed the census of 1920. The Act of 1929 did not increase the number of Representatives, but apportioned the 435 members among the states according to the provision in Amendment XIV; the number of Representatives from Missouri, formerly 16, was reduced to 13.

The Act of 1842, following the census of 1840, for the first time provided that Representatives should be elected by districts composed of contiguous territory, and the act following the census of 1870 had the same provision with the addition that the districts should be as nearly as practicable equal in number of inhabitants. That act also provided that in states where there was an increased number of Representatives the additional Representatives should be elected at large, and other Representatives entitled to be elected by the districts then provided for, until the legislature of the state might otherwise provide.

Similar provisions appeared in each subsequent apportionment act until that following the census of 1900, which further provided that if the number provided should in any state be less than it was before the whole number in such state should be elected at large, unless the legislature of such state should provide otherwise.

The Act of 1911 contains the following pertinent sections:

''Section 3. (Election by districts.) That in each state entitled under this apportionment to more than one Representative, the Representatives to the Sixty-third and *each subsequent Congress shall be elected* by districts composed of a contiguous and compact territory, and containing, as nearly as practicable, an equal number of inhabitants. The said districts shall be equal to the number of Representatives to which such State may be

entitled in Congress, no district electing more than one Representative.

"Sec. 4. (Redistricting States—Representatives at Large.) That in case of an increase in the number of Representatives *in any State* under this apportionment such additional Representative or Representatives shall be elected by the State at large and *the other Representatives* by the districts now prescribed by law until such State shall be *redistricted in the manner provided by the laws thereof,* and in accordance with the rules enumerated in section three of this Act; and if there be no change in the number of Representatives from a State, the Representatives thereof shall be elected from the districts now prescribed by law until such State shall be redistricted as herein prescribed." [37 Stat. L. 14.]

These provisions, respondent claims, are still in force because enacted in accordance with Section 4, Article I, of the Constitution providing that "Congress may at any time by law make or alter" the regulations mentioned. Section 4 of that Act (1911) provides that in case of an increase of Representatives *"in any state"* under this apportionment, such additional representatives may be elected by the state at large: "and the *other Representatives* by the districts *now prescribed by the laws thereof* and in accordance with the rules enumerated in Section 3 of this Act." The State of Missouri having no increase over the former apportionment comes under the head of "the other Representatives." Its representatives are to be elected by the districts now prescribed by law until it shall be redistricted in the manner provided by the "laws thereof." Since the number of representatives for Missouri has been reduced the former districts no longer exist and Representatives must be elected at large.

II. The above conclusion is on the assumption that the pertinent provisions of the Act of 1911 are still in force. In the Minnesota case it was held that sections 3 and 4 of that act "expired by their own limitations," because the use of the words "under this apportionment" in both sections made them inapplicable to any other apportionment.

In the New York case the court reached a similar conclusion, holding that the Act of 1911 was a temporary enactment because the language "under this apportionment" limited its operation. That court differed from the Minnesota court on the meaning of the word "legislature."

The Minnesota court said of the apportionment acts:

"The history, nature, purpose and language of the several statutes disclose a clear intention on the part of Congress to have each of these apportionment acts replace its immediate predecessor. We

believe it was the intention of Congress to have the Act of 1929 supersede and take the place of the entire statute of 1911."

If that is correct then there is no longer a requirement for Congressional districts of any description. The Act of 1929 makes no mention of districts of contiguous territory and equal population. It does not mention districts or redistricting at all. The title of the act discloses its purpose: "An Act to provide for the fifteenth and subsequent decennial censuses and to provide for apportionment of representatives in Congress." It establishes a permanent method for census taking and apportionment.

Section 21 of the act repeals the Act of 1902 establishing a permanent census office and acts amendatory thereof. It repeals all other laws or parts of laws "inconsistent with the provisions of this act."

The provisions of Sections 3 and 4 of the Act of 1911 are not inconsistent with the Act of 1929. Neither are similar provisions in acts previous to the Act of 1911, relating to districts of contiguous territory of equal population and other regulations. Why did Congress think it necessary to repeal specifically other acts relating to a permanent census bureau and to apportionment, and to repeal other acts inconsistent with the Acts of 1929, unless it meant to leave in force other acts which were not inconsistent with it? If the Act of 1911 expired by its own limitation in the use of the words "under this apportionment" what of prior acts containing the same provisions about Congressional districts which did not have those terms? Would they be in force? Certainly not if each of those apportionment acts "replaced" its immediate predecessor, as held by the Minnesota court. In Clause 1 of Section 22 of the Act of 1929 is mentioned the "method used in the *last preceding* apportionment." Does that mean merely the apportionment of Representatives among the states, or does the "method" include redistricting the states which was included in the preceding apportionment? It seems to us that Congress did not intend by the Act of 1929 to abolish the requirement of Congressional districts of contiguous territory of practically equal population and other provisions of previous acts. Nor do we think it was meant to repeal or supplant the other provisions of Sections 3 and 4 of the Act of 1911. Does the expression "under this apportionment" relate to every provision of Section 4? Or only to "such additional Representatives" where the number for any state is increased?

The requirement in Section 4, for the election of "other representatives by districts now prescribed by law until such state shall be redistricted in the manner provided by the laws thereof," applies to districts not affected by "this apportionment" and also to those in states where there was a decrease in the number of Repre-

sentatives. Are the provisions relating to those "other districts" limited to "this apportionment?" It is for the Federal courts to construe the Act of 1911, so far as it may or may not affect later apportionments.

III. Whatever the U. S. Supreme Court may decide about continued validity or expression of the Act of 1911 the terms of Sections 3 and 4 are significant as a Congressional interpretation of Section 4, Article I, of the Constitution. It recognizes the "manner" of redistricting in the state to be "as provided by the laws thereof." It refers to districts existing as "the districts now [August 8, 1911] prescribed by law," meaning of course, districts then existing by the laws of the several states. And that interpretation was recognized and approved by the Federal Supreme Court in the case of State ex rel. Davis v. Hildebrant, 241 U. S. 565, where the Act of 1911 came under consideration. The court there gave effect to the expression in the Act of 1911 "in the manner provided by the laws thereof," thereby giving judicial sanction to the congressional interpretation that the redistricting in a state should be made by the laws of the state. It went further and held that in Ohio the referendum was a part of the law-making power of the State, to be asserted in approving or disapproving a redistricting act by the legislature.

IV. It is contended by the respondent here that in the absence of any regulation by the Federal Constitution or Congress, each state had the inherent right to make its own districts for its Congressional Representatives on the theory that the powers of Congress and of the Federal Government were delegated powers and all other powers were reserved to the states. That principle does not apply here. A member of Congress is not a state officer. He does not represent the State. He represents the people of the United States in the district from which he is elected. He is a United States officer. The states were in existence before "We, the people of the United States" adopted the Constitution. Each state in turn chose to accept the limitations of its sovereignty imposed upon it when it came under the Constitution. Congressmen were the creation of the Constitution—purely Federal officers over which a state has no control. So far as the State has authority to divide the State into congressional districts it derives that authority from the Federal Constitution and the acts of Congress. Of course when the Constitution assigns to each state the right to elect Representatives, if there is no provision as to how they are to be elected, by necessary implication a state would have the right to choose a method of carrying out the mandate.

V. In interpreting language used in a constitution or a statute the context is important. The word "legislature" means a political

body of persons organized for the purpose of making laws. Appropriately it could not mean merely the members of that body. It cannot act *as* a legislature except in its official capacity. Its normal function is the enactment of laws. When assigned a certain duty that duty must be performed by the enactment of a law unless the context implies the exercise of some other function. What is the nature of the act to be performed? It is possible for the Federal Constitution or an act of Congress to assign to a state legislature the performance of a ministerial act. From the context, from the act to be performed must be determined whether something other than the normal function is to be exercised.

As pointed out above, choosing a Senator of the United States or ratifying a constitutional amendment requires no exercise of the lawmaking power.

Compare those provisions with Section 4, Article I: "The times, places and manner of holding elections for senators and representatives shall be *prescribed* in each state by the legislature thereof."

The word "prescribe" as appropriate here, means "to lay down authoritatively a guide, direction or rule of action." That definition occurs in the dictionaries and in Corpus Juris.

"The time, places and manner" of holding elections the legislature must prescribe. The acts to be performed contemplate the establishment of a rule of action which can be accomplished only by that organized body in the enactment of a law. The "manner" of holding elections includes the qualifications of judges, the form of the ballots, and other details, all of which are fixed by law and can be provided only by establishing a rule, not merely for one election but for all elections. It may be said that prescribing those details is different from the forming of districts. The "manner of holding elections" includes everything that comes within the meaning of those words. It is the same legislature which performs all the acts constituting the "manner of holding elections." The word "legislature" cannot mean one thing for one of such duties and another thing for the rest. It cannot mean the law-making power in prescribing some of the details in the manner of holding elections and the mere individual action of the members in prescribing others.

Further, dividing a state into political subdivisions, or creating territorial districts of any kind, is a legislative act. [Haeussler Inv. Co. v. Bates, 306 Mo. 1. c. 411.] This court said in State ex rel. v. Hitchcock, 241 Mo. 1. c. 457, "that the districting of the State into legislative, senatorial, congressional and judicial districts is the exercise of legislative authority, cannot be successfully questioned."

That case concerned the state senatorial districts, and it might be claimed that the mention of Congressional and judicial districts is

*obiter.* Yet the same principle would apply. It is a legislative act. That case was quoted and approved in State ex rel. Lashly v. Becker, 290 Mo. 560. While there were dissenting opinions as to the result in the latter case, the principle was not questioned that dividing the state into districts is a legislative act.

However, all doubt about the meaning of the word "legislature" used in Section 4, Article I, of the Federal Constitution, was set at rest by the United States Supreme Court, in Hawke v. Smith, 253 U. S. 221, where (l. c. 231) in discussing the difference between a ratification of a constitutional amendment and dividing a state into Congressional districts that court said:

"Article I, Section 4, plainly gives authority to the State to legislate within the limitations therein named. Such legislative action is entirely different from the requirement of the Constitution as to the expression of assent or dissent to the proposed amendment to the Constitution. In such expression no legislative action is authorized or required"—citing State ex rel. Davis v. Hildebrant, supra.

Plainly, if the United States Supreme Court should affirm the judgment in the Minnesota case it would be because of the Minnesota court's interpretation of its own constitution.

Congress never passed an act redistricting the states for the Representatives in Congress. It has recognized the division of the states into districts under Section 4, Article I, of the Federal Constitution as accomplished by the laws of such states.

The alternative writ is quashed. All concur.