(No. 21655.—

EDGAR B. ELDER *vs.* JOSEPH F. MALL *et al.*—(JOSEPH F. HAAS, Appellant, *vs.* EDGAR B. ELDER *et al.* Appellees.)

*Opinion filed December 23, 1932.*

SMIETANKA, BRYANT & CONLON, (JULIUS F. SMIE-TANKA, and JOHN T. CONLON, of counsel,) for appellant.

ROBERT McCORMICK ADAMS, (BURKE WILLIAMSON, of counsel,) for appellee Edgar B. Elder; EDWARD F. DUNNE, for other appellees.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

On April 12, 1932, a primary election was held in the city of Chicago in accordance with the provisions of the Primary Election act. Among other candidates that were nominated at this primary election were twelve for associate judges of the municipal court of Chicago by each political party. Fifty-seven persons filed nominating petitions as candidates for such offices on the Republican ticket, and the names of these candidates were printed on the Republican ballots in the city of Chicago at the primary election. Among these candidates were appellant, Joseph F. Haas, (formerly Joseph F. Mall,) and appellee Edgar B. Elder. At the primary election on the face of the returns Haas received 106,025 votes and Elder received 96,052, Haas receiving the eleventh highest number of votes of such Republican candidates and Elder the thirteenth highest number, and in the natural course of proceedings Haas would be entitled to a certificate of nomination, as one of the Republican candidates, as associate judge of the municipal court of Chicago and would have his name placed on the official ballot to be voted at the election on November 8, 1932. Before the issuance of such certificate Elder filed a bill in chancery in the superior court of Cook county, making appellee John S. Rusch, chief clerk of the board of election commissioners of the city of Chicago, and the members of the board of election commissioners and canvassing board of the city of Chicago, parties defendant. The bill, among other things, alleged that appellant's name was Jo-

seph F. Mall and that under that name he had at times been an unsuccessful candidate for public office, and, planning at some future time to again become a candidate under a name that would prove attractive to the voters of Chicago, petitioned the circuit court of Cook county on July 17, 1930, with his wife, Aleksandra, to change their names to Haas instead of Mall; that one Joseph F. Haas, not an attorney, who died about March, 1928, was for many years county recorder of Cook county and was widely known as bearing an excellent reputation, having been many times elected to public office, always polling a large vote; that one John F. Haas was then, and has been for many years, an associate judge of the municipal court of Chicago, bearing an excellent reputation and widely and favorably known by the voters, and that because thereof the name "Haas" was widely advertised in the city of Chicago and was well and favorably regarded by the electorate; that many voters, ignorant of the fraud practiced on them, on April 12, 1932, cast their ballots for appellant, Joseph F. Haas, believing that the person so referred to was John F. Haas, judge of the municipal court of Chicago, who they believed was a candidate for re-election, and that but for the fraudulent acts of appellant the complainant would have won the nomination but is now about to be deprived thereof by reason of the false and fraudulent acts of appellant. The bill prayed for an injunction restraining the board of election commissioners and the canvassing board from making the proclamation of the number of votes cast at the primary election of April 12, 1932, for Joseph F. Haas for the office of associate judge of the municipal court of Chicago and from executing a certificate of nomination to him or delivering the same to John S. Rusch, chief clerk of the board of election commissioners, and restraining Rusch from issuing a certificate of nomination to any person by the name of Joseph F. Haas to such office. After a demurrer of appellant to the bill had been over-

ruled the bill was answered by the defendants. A hearing resulted in the court entering a decree in accordance with the prayer of the bill. The cause is here on appellant's appeal from this decree.

Many causes for reversal are urged which it is not necessary for us to consider. The bill did not state a cause of action of which a court of chancery had jurisdiction and should have received no consideration by the superior court. In *Sheridan* v. *Colvin,* 78 Ill. 237, it is said: "The subject matter of the jurisdiction of the court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral which do not affect any right to property. Nor do matters of a political character come within the jurisdiction of the court of chancery. Nor has the court of chancery jurisdiction to interfere with the public duties of any department of government except under special circumstances and where necessary for the protection of rights of property." In *Fletcher* v. *Tuttle,* 151 Ill. 41, it was held that it was elementary that the subject of the jurisdiction of courts of chancery was civil property, and that such courts had no jurisdiction in matters merely criminal or merely immoral which do not affect any right of property, and that matters of a political character do not come within the jurisdiction of such courts. It was likewise held that the extraordinary jurisdiction of a court of chancery cannot be invoked to protect the rights of a citizen to vote or be voted for at an election or his right to have his name printed on the ballot as a candidate for or to be elected to any office. In *Payne* v. *Emmerson,* 290 Ill. 490, it was held that the jurisdiction of a court of equity pertains only to the maintenance of civil, personal and property rights, and that equity had no jurisdiction over matters of a political nature

unless civil property rights were involved, and that an election was a political matter, with which courts of equity have nothing to do. (See, also, *Spies* v. *Byers,* 287 Ill. 627; *People* v. *McWeeney,* 259 id. 161; *People* v. *City of Galesburg,* 48 id. 485.) There is no property right in public office, and in the present case no property or other rights of Elder were involved of which a court of chancery had cognizance. The court should have sustained the demurrer to Elder's bill and dismissed it for want of jurisdiction.

The decree of the superior court is reversed and the cause remanded to that court, with directions to dismiss the bill for want of jurisdiction.

*Reversed and remanded, with directions.*