Rose Secco, a Minor, by Frances Secco, her Mother and Next Friend, Appellant, v. Chicago Transit Authority, Appellee.

Gen. No. 46,151.

Opinion filed March 23, 1954. Rehearing denied April 6, 1954. Released for publication June 2, 1954.

ARTHUR S. GOMBERG, of Chicago, for appellant; SAMUEL NINEBERG, of Chicago, of counsel.

THOMAS C. STRACHAN, JR., WERNER W. SCHROEDER, and JAMES E. HASTINGS, all of Chicago, for appellee.

MR. JUSTICE ROBSON delivered the opinion of the court.

Plaintiff filed her statement of claim in the municipal court of Chicago for personal injuries sustained as a result of defendant's negligence and asked judgment in the sum of $5,000. Defendant filed a motion to dismiss, on the ground that the court did not have jurisdiction, and was sustained by the trial court. Plaintiff appealed to the Supreme Court and the cause was transferred to this court.

The jurisdiction of the trial court rests upon an amendment to the Municipal Court Act passed at the 1951 session of the legislature, known as House Bill 1188 (Ill. Rev. Stat. 1951, chap. 37, par. 357 [Jones Ill. Stats. Ann. 108.028]), increasing the jurisdiction of the municipal court in civil actions of the fourth class for the recovery of money (excepting certain types of action later referred to) from $1,000 to $5,000. The Act was made subject to approval on referendum by the legal voters of the City of Chicago. Certain constitutional questions were raised in the trial court and in the briefs originally filed in the Supreme Court, but as the case has been transferred to this court, we assume that the questions involved are, first, those

242

of construction and interpretation and, second, the validity of the election at which the Act was submitted for approval.

The essential provisions of the Act as amended necessary for determination of the first question are as follows:

"That said municipal court shall have jurisdiction in the following cases:

"First. Cases to be designated and hereinafter referred to as cases of the first class, which shall include (a) all actions on contracts, express or implied, whether implied in law or implied in fact, when the amount claimed by the plaintiff, exclusive of costs, exceeds one thousand dollars ($1,000); (b) all actions for the recovery of personal property and all proceedings for the trial of the right of property when the value of the property sought to be recovered or the right to which is disputed, as claimed by the plaintiff, exceeds one thousand dollars ($1,000); and (c) all actions for the recovery of damages for the conversion of personal property, all actions for the recovery of damages for injuries to personal property, and all actions for the recovery of damages for injuries to real estate or any interest therein, when the amount of damages sought to be recovered, as claimed by the plaintiff, exclusive of costs, exceeds one thousand dollars ($1,000).

"Second. . . .

"Third. . . .

"Fourth. Cases to be designated and hereinafter referred to as cases of the fourth class, which shall include, (a) all civil actions, quasi-criminal actions excepted, for the recovery of money only when the amount claimed by the plaintiff, exclusive of costs, does not exceed five thousand dollars (*$5,000*), the amount in any action on a bond to be determined by

the amount actually sought to be recovered and not by the penalty of the bond; (b) all actions for the recovery of personal property when the value of the property sought to be recovered does not exceed one thousand dollars ($1,000); (c) all proceedings for the trial of the right of property of which the value, as claimed by the plaintiff, does not exceed one thousand dollars ($1,000); (d) all actions of forcible detainer, and (e) all actions and proceedings of which justices of the peace are now or may hereafter be given jurisdiction by law and which are not otherwise provided for in this Act, in which class of actions and proceedings the municipal court shall have jurisdiction as cases of the fourth class where the amount sought to be recovered does not exceed one thousand dollars ($1,000). In any action of the fourth class for the recovery of money only, judgment may be rendered for over five thousand dollars (*$5,000*), where the excess over five thousand dollars (*$5,000*) shall consist of interest or damages or costs accrued after the commencement of such action."

It will be noted that the quoted provision of sec. 4 refers to all actions for the recovery of money not to exceed $5,000, which we have italicized (excepting those tort actions enumerated in items (b) and (c)). This was originally $1,000. However, in contract cases as well as in actions for the conversion of personal property and for damages to real estate, provision was made for jurisdiction as first class cases when the amount was in excess of $1,000, with no maximum limitation. Thus an action in contract for $5,000,000 could be filed in the municipal court, while in personal injury cases the action was limited to $1,000 and was classified as a fourth-class case. If the amended portion is literally construed, a conflict exists, but only with respect to classification, and the question pre-

sented is whether this invalidates the amendment or whether the two sections may be reconciled. Defendant contends that this ambiguity and uncertainty renders the whole Act invalid because it is impossible to determine whether an action in contract, where the amount sought to be recovered is between $1,000 and $5,000, should be filed as a first-class or a fourth-class case, and whether the practice in the first or fourth class should prevail.

 A long line of cases holds that one of the cardinal canons of statutory construction is to ascertain the intent of the legislature by considering not only the language used but also the evil to be remedied and the object to be attained. *People v. Funkhouser,* 385 Ill. 396, 403, and cases cited there. This court takes notice of the fact that in the circuit and superior courts of Cook county there is a three and one-half to four-year lapse between the filing and the trial of practically all personal injury cases. The backlog awaiting trial at the present time is approximately twenty-four thousand cases. This deplorable situation has been the concern of members of these courts who have studied it and sought to apply remedial measures. Sometimes plaintiffs of limited financial means, because of this long waiting period, must settle their claims for a fraction of their reasonable worth. All parties suffer through loss of necessary witnesses who disappear or die. Under many circumstances, of which these two are examples, the protracted delay between filing and trial amounts to a denial of justice. It is estimated that fifty per cent of these cases filed in the circuit and superior courts involve claimed damages of between $1,000 and $5,000. In contrast, the municipal court is current in its work and there is no appreciable waiting period between the filing of an action and trial. We therefore take judicial notice of the fact

245

that the legislative intent of this Act was to grant relief to litigants in personal injury cases by increasing the jurisdiction of the municipal court from $1,000 to $5,000 in such cases under the fourth section of the Municipal Court Act. There was no need for any change in contract cases. We must keep in mind that prior to the amendment, the municipal court had jurisdiction only of personal injury cases pursuant to item (a), section 4, where the recovery sought was less than $1,000, and what the amendment did was to increase that limitation to $5,000.

Our courts have held that if the language of a statute admits of two constructions, one of which makes the enactment mischievous, if not absurd, and the other renders it reasonable and wholesome, the construction leading to an absurd result should be avoided. *People v. Funkhouser, supra; People ex rel. Serbin v. Calderwood,* 333 Ill. App. 541, 547. Further, where the enactment of a series of statutes results in confusion and consequences which the legislature may not have contemplated, the Acts must be construed in such a way as to reflect the obvious intent of the legislature and permit the practical application of the statutes. In the recent case of *Bell v. School Dist. No. 84,* 407 Ill. 406, our Supreme Court said (p. 413):

"A statute amending a former act operates, as to matters thereafter occurring, precisely as if the amendatory statute had been added to the prior act at the time of its adoption, and the two acts must be construed together and as one statute. (*Holbrook v. Nichol,* 36 Ill. 161). We have held that where two acts or parts of the same act are seemingly repugnant, they should be so construed, if possible, that both the repugnant provisions may stand. *Anderson v. City of Park Ridge,* 396 Ill. 235."

In the case of *People v. Anderson,* 398 Ill. 480, the Supreme Court said (p. 485):

"So, while courts are and should be cautious about adding words, as such, to a statute generally, they will not hesitate to read into the sense of some section or provision a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent the legislative purpose from failing in one of its material aspects."

Guided by this principle our courts have supplied words inadvertently omitted by the legislature (*Burns v. Industrial Commission,* 356 Ill. 602), even entire clauses (*Scofield v. Board of Education of Community Consol. Sch. Dist. # 181,* 411 Ill. 11), and have undertaken to substitute words, figures and phrases (*People v. Anderson, supra*).

 Applying the law as stated in these cases, may this Act be reasonably construed so as to avoid an irreconcilable conflict? We are of the opinion that there is clearly a basis for such an interpretation. It will be noted that in the first class were included not only contract cases in excess of $1,000, but also actions for the recovery of personal property, proceedings for the trial of the right of property, actions for the conversion of personal property, for damages to personal property, and for damages to real estate, or any interest therein, when the amount exceeds $1,000. The legislature did not change this classification. They were originally incorporated among first-class cases together with actions on contracts and are still first-class cases. Thus we see that the legislature intended to give a special grouping to these cases and that it was intended to keep them in the first class when the amount involved was more than $1,000. At no time

were personal injury cases included in any of the groups in the first class. In pursuance of its objective to extend the jurisdiction of the municipal court with respect to personal injury cases, the legislature undertook to amend the provision of section 4 insofar as that was necessary to extend the jurisdiction of that court with respect to those cases, and that far only. In doing so, it used general language which created the technical conflict with respect to contract cases. That they did not intend to make any change with respect to the classification of contract cases is indicated not only by the fact that the object or purpose of the amendment did not require any such change, but by the further fact that with respect to the other special groups of cases, such as actions for the recovery of personal property and proceedings for the trial of the right of property, the distinction between first and fourth class was continued as before on the basis of a $1,000 *ad damnum*. We are of the opinion that section 4 as amended includes actions for the recovery of money not to exceed $5,000, except contract actions where the amount claimed is in excess of $1,000, and the other exceptions enumerated.

The next point that defendant raised was that the referendum portion of House Bill 1188, which reads as follows:

"2. Referendum. This act shall be submitted to a vote of the legal voters of the city of Chicago at the first regular municipal, judicial, general or special election which shall occur in said city of Chicago more than ninety days after the first day of July, A.D., 1951. . . . ,"

is mandatory and not merely directory. The essential facts pertaining to this point are that on April 8, 1952, a primary election was held in Chicago at which time there were nominations of certain state and county

officers, elections of ward committeemen, election of delegates and alternate delegates to the national nominating convention and nomination of judges to the municipal court. At the same time a special election was held on a proposition of the Board of Education of the City of Chicago to increase the annual rate for playground purposes of the School District.

The call of the special election was based on a resolution adopted by the Board of Education on December 12, 1951, and on February 7, 1952, it was transmitted to the Board of Election Commissioners of the City of Chicago. This resolution was found to be defective and on February 28 an amended resolution was transmitted to the Board of Election Commissioners which was the one voted upon at the election on April 8, 1952. At this election there were approximately 2,000,000 registered voters eligible to vote in the City of Chicago. A total of 977,107 votes were cast. The amendment to the Municipal Court Act, which was House Bill 1188, was not submitted to the voters of the City of Chicago until the Judicial Election of June 2, 1952, at which only 217,549 voted out of an eligible list of 2,000,000. Of these 74,596 voted in favor of the adoption of the amendment and 43,396 voted against it.

Defendant contends that it was mandatory that the Act be submitted to the voters for approval at the April 8, 1952 election, and therefore the action at the June 2, 1952 election was void and of no effect. Plaintiff takes the opposite position and contends that, inasmuch as the referendum provision was merely directive and not mandatory, the action of the voters on June 2, 1952 in approving the Act was proper.

 An examination of the referendum section discloses no language that expressly declares the referendum clause to be mandatory. It is the rule in this State that where a statute imposes duties upon officials

249

connected with the holding of an election and by express language provides that the omission to perform shall render the election void, the courts are bound to enforce that statute and pronounce the election void, regardless of any consideration touching the policy of such statute. But where the statute provides that certain facts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election. *Siedschlag v. May,* 363 Ill. 538; *Fiedler v. Sanitary Dist. Bloom Township,* 359 Ill. 221; *People v. Crossley,* 261 Ill. 78. It has also been held that the absence of such an express provision permits a more liberal directory interpretation. *People ex rel. Lunn v. Chicago Title & Trust Co.,* 409 Ill. 505.

A further distinction can be made in determining the effect of prescriptions in election statutes, one, those in which the proceeding is to compel compliance, and two, those in which the proceeding is one which may result in the invalidation of an election already held. In the first group generally falls the class of cases in which *mandamus* is brought to compel compliance or injunction is sought to prevent noncompliance. In this group statutory requirements are usually strictly construed. 29 C. J. S. Elections, sec. 214 (p. 311). In the second group the action brought may involve *quo warranto* or the setting up of the invalidity of an election as a defense such as we have in this case. In general it may be said that in this second group the courts are reluctant to demand strict compliance with statutory requirements. *People v. Miller,* 314 Ill. 474, 479.

250

██ In our case, until February 8, 1952, the April 8th date was to be only a primary election, and there was a question whether this was such an election as was contemplated in the referendum. *People v. Emmerson*, 333 Ill. 606. On this date, just 39 days before the primary election, the Board of Education of the City of Chicago had included a special election for the increase of its playground tax. This special election brought it within the intent of the referendum. The bill did not contain a directive to the Secretary of State or any of the public officials to notify the Board of Election Commissioners as to the time for presenting the amendment to the Municipal Court Act to the electorate. In view of these circumstances, we cannot say that the Board of Election Commissioners intentionally failed to include the referendum in the April 8, 1952 election.

In the case of *People v. Crossley, supra,* the statute provided for the election of members of the Board of Education, said election to be held within 30 days after a favorable vote upon the organization of the District. On April 20th an election was held and a favorable vote cast. The election of the members of the Board of Education was not held until June 1, 1912, forty-two days later. The court held that whether the election took place within 30, 40 or 50 days could not affect the election of the Board members and sustained the election. They also held that the failure to elect the members in accordance with the statute would not invalidate the election establishing the School District.

In *People ex rel. Elder v. Quilici,* 309 Ill. App. 466, a municipal court vacancy was filled at an election of superior court judges. The Board of Election Commissioners combined the precincts so as to make a smaller number of polling places. *Quo warranto* was

251

filed by the People on relation of Edgar Elder, who was defeated at this election by the defendant. The gist of the action was that this election was null and void in that it was conducted in only 648 precincts out of a total of 3,648 in the City of Chicago. It was held that statutory provisions regulating the conduct of an election are deemed directory after an election in which no improper voting occurred.

Defendant here does not allege that there was any fraud or any improper voting. It stresses, however, that at the April election approximately 977,107 out of a possible 2,000,000 registered voters cast their ballots. At the June 2, 1952 election only 217,549 voted, and on the amendment to the Municipal Court Act 74,596 voted in favor of it and 43,396 voted against it. It is not contended that the failure to place the referendum before the electorate at the April 8, 1952 election involved any fraud or malicious intent on the part of the Election Commissioners. It is not contended that there was any illegal voting at the June 2, 1952 election. Further, defendants do not contend that the delay between the passage of the bill and the June 2, 1952 election was unreasonable, nor that the Election Commissioners tried to avoid the purpose of the Act. It is their contention that if the larger number of the electorate had voted on the referendum the result might have been different.

█ █ The law should not vest officials whose responsibility it is to call an election in conformity with legislative requirements with an unreasonable discretion which might enable them to influence the result, nor should it grant such officials the power to defeat the legislative intent by failing, whether by design or neglect, to conform strictly with the statutory requirements. The submission at the June 2, 1952 election, in the absence of any fraudulent design or

252

neglect to avoid the purpose of the Act, meets the substantial requirements of the referendum provision.

The order of the trial court dismissing plaintiff's statement of claim is reversed, and the cause remanded with instructions to allow the defendant to plead or answer to the statement of claim in a manner not inconsistent with this opinion.

*Order reversed and cause remanded with directions.*

SCHWARTZ, P. J. and TUOHY, J., concur.