332 P.2d 887

**Richard F. HARLESS, Petitioner,**

**v.**

**Lorna E. LOCKWOOD, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent.**

**No. 6756.**

Supreme Court of Arizona.

Dec. 10, 1958.

Richard F. Harless, Phoenix, in pro. per.

George N. Hill and John E. Savoy, Phoenix, for respondent.

UDALL, Chief Justice.

This is an original proceeding in mandamus initiated by petitioner, Richard F. Harless, seeking to compel respondent, Lorna E. Lockwood, presiding judge of Division 5 of the Superior Court of Maricopa County, to hear and determine a pending primary election contest wherein the petitioner was the contestant and Joe Haldiman, Jr., the contestee. After an informal hearing held under the provisions of Rule I (Rules of the Supreme Court, 17 A.R.S.) we issued an alternative writ of mandamus on October 16, 1958, returnable the next day, at which time the matter was orally argued and briefs submitted. Time being of the essence immediate consideration was given to said matter and on October 21, 1958, by an appropriate minute entry, this court ordered that the alternative writ of mandamus theretofore ·issued be made peremptory and stated that a written decision in accordance with the constitutional requirement (article 6, section 2, A.R.S.), would follow. We now state our reasons for such action.

First we shall more fully recite the facts giving rise to the instant proceeding: Petitioner Harless, and Joe Haldiman, Jr., were rival candidates for the Democratic nomination for Representative in Congress (District No. 1), at the primary election held on September 9, 1958. Haldiman was declared the winner and a certificate of nomination was issued to him. Shortly thereafter Harless filed a statement of con-

test in the superior court. Haldiman moved to dismiss it. The case was assigned to respondent, Judge Lockwood, who after hearing arguments entered the following order on October 15, 1958, viz.:

"It is ordered granting the contestee's motion to dismiss, on the ground that the court lacks jurisdiction to hear the particular action."

On the same day this order was entered Harless filed a petition with this court asking for an alternative writ of mandamus, which was issued with the result heretofore stated.

It is apparent the respondent judge became convinced that in Arizona there is no statutory authority for an election contest by a candidate for Representative in Congress, hence she held the court had no jurisdiction to proceed with a hearing on such a matter. The correctness of this conclusion coupled with petitioner's right to the relief sought by way of mandamus are the questions to be considered.

The pertinent statutory provisions are as follows:

A.R.S. § 16–505.

"Contests arising out of primary elections shall be brought and determined in the same manner, as nearly as possible, as provided by law for contests of general elections."

A.R.S. § 16–1201.

"A. Any elector of the state may contest the election of any person declared elected to a state office, *or declared nominated to a state office* at a primary election, * * *." (Emphasis supplied.)

Counsel for respondent places great reliance upon a decision from the Texas Court of Civil Appeals, entitled Lane v. McLemore, 169 S.W. 1073, which most nearly supports their position that a contest would not lie in the instant case.

The law is well settled in this jurisdiction that election contests are purely statutory, unknown to the common law, and are neither actions at law, nor suits in equity, but are special proceedings. Grounds v. Lawe, 67 Ariz. 176, 193 P.2d 447. Furthermore, there can be no doubt but that a member of Congress is not, strictly speaking, a state officer. He does not represent the state, but represents the people of the United States in the district from which he is elected. He is a United States officer. State ex rel. Carroll v. Becker, 329 Mo. 501, 45 S.W.2d 533. Does it follow then, that the legislature of Arizona, by failing to enumerate the office in question in section 16–1201, supra, has failed to make provisions for election contests, in either primary or general elections, by those who seek to be our representatives in the Congress? We think not. To so hold would be an affront to the intelligence of the legislators and adoption of a

most narrow interpretation of the legislative intent when the historical background of the legislation along with the Constitution and present statutes dealing with election matters are considered as a whole.

The holding of primary elections to nominate candidates for federal offices is strictly a state affair. Newberry v. United States, 256 U.S. 232, 41 S.Ct. 469, 65 L.Ed. 913. The authority for such an election stems from article 7, section 10, Constitution of Arizona:

"*Direct primary election law*

"The Legislature shall enact a direct primary election law, which shall provide for the nomination of candidates for all elective State, county, and city offices, *including candidates for United States Senator and for Representative in Congress.*" (Emphasis supplied.)

Another constitutional provision having a bearing upon our problem is found in section 12, article 7, which reads:

"*Registration and other laws*

"There shall be enacted registration and *other laws* to secure the purity of elections and guard against abuses of the elective franchise." (Emphasis supplied.)

In obedience to these mandates the legislature enacted Title 16, Elections and Electors, which includes chapter 5, entitled Primary Elections, and chapter 9, Contest of Elections. A study of these statutes discloses that the various provisions relative to requirements made of candidates seeking a place on the ballot, e. g., as to nomination petitions and where filed; nomination paper to be signed by the candidate; statement of campaign expenses, penalty for failure to file and limitations on expenditures, applies alike to candidates for representatives in the Congress as it does to state officers even though the federal offices are not always specifically enumerated.

The problem presented is largely one of statutory construction. Therefore, let us examine prior pronouncements, both of this court and statements from other jurisdictions as to the principles that control. In the case of Garrison v. Luke, 52 Ariz. 50, 55, 78 P.2d 1120, 1122, it is stated:

"The cardinal rule of statutory construction is that we are to ascertain the meaning of the legislature, and give it effect if such meaning be constitutional. (Citing case.) In determining this intent, we take into consideration many things—the language used, the object to be accomplished, whether a literal interpretation of the language will lead to an impossibility or an absurdity, the history back of the act, and numerous other matters, no one of which is absolutely controlling as to the intent. It is from a combination of all of these that we deduce such intent. (Citing case.) Of course if the language is

plain and unambiguous, if it can be given but one meaning and that meaning does not lead to an impossibility nor an absurdity such as cannot be contemplated the Legislature intended, we follow that meaning, even though the result may be, in our opinion, harsh, unjust or a mistaken policy. (Citing cases.) If, however, a literal application of the language leads to a result which produces an absurdity, it is our duty to construe the act, if possible, so that it is a reasonable and workable law, not inconsistent with the general policy of the Legislature, even though in so doing we may be compelled to change the punctuation or even the precise language of the act." (Citing cases.)

In Adams v. Bolin, 77 Ariz. 316, 320, 271 P.2d 472, 474, we pointed out that "It is fundamental that statutes are not interpreted piecemeal." Therein we quoted this excerpt from Hicks v. Krigbaum, 13 Ariz. 237, 241, 108 P. 482, 485:

"'In the construction of a statute, it is the intent and purpose of the law, not the letter, that must control, and the whole statute must be considered.' * * *."

The Criminal Court of Appeals of Oklahoma, in the case of Ex parte Houston, 93 Okl.Cr. 26, 224 P.2d 281, 299, stated:

"Of course the primary duty of this court is to seek the legislative intent, and to arrive at that intent, the entire statute must be considered, and where such intention can be gathered from an entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended. Also, where the legislative intent is plainly discernible from the provisions of a statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed. * * *"

See also Curtis v. Registered Dentists of Oklahoma, 193 Okl. 233, 143 P.2d 427. There are two other excellent cases that enunciate the same principles, viz.: Secco v. Chicago Transit Authority, 2 Ill.App.2d 239, 119 N.E.2d 471, and McCullen v. State ex rel. Alexander, 217 Miss. 256, 63 So.2d 856.

To us it is inconceivable that the legislature in providing for election contests— the very purpose of which is to aid in securing "the purity of elections and guard against abuses of the elective franchise" (section 12, article 7, supra)—purposely left without redress those who were candidates to represent the State of Arizona in the Congress. Certainly if there is no relief in the state courts petitioner is remediless as the federal law is silent on the sub-

ject. Newberry **v.** United States, supra. We believe that the duty enjoined upon us by A.R.S. § 1–211: " \* \* \* Statutes shall be liberally construed to effect their objects and promote justice \* \* \* ", is applicable here. Hence we hold that the use of the phrase "state office" appearing in section 16–1201, supra, can properly be interpreted *in its broad sense* as encompassing nominees for representatives to the Congress of the United States. The trial court, therefore, improperly divested itself of jurisdiction to entertain and dispose of the instant contest.

 Finally we consider whether mandamus was a proper remedy to compel respondent court to hear this matter. In the case of State v. Phelps, 67 Ariz. 215, 218, 193 P.2d 921, 923, this categorical statement relative to mandamus appears:

" \* \* \*. Mandamus is available where a court refuses to exercise jurisdiction rightfully possessed \* \* \*."

This is exactly the problem petitioner was confronted with in the instant case. The rule is stated in the following excerpt from 35 Am.Jur., Mandamus, section 254:

" \* \* \* mandamus will issue at the instance of one entitled to invoke the remedy, to compel it to assume jurisdiction and proceed to a determination of the cause, or to correct any unauthorized attempt to divest itself of jurisdiction by dismissal, unless the

aggrieved party has a remedy by appeal or error which is adequate. \* \* \*"

In New York Life Ins. Co. v. Phelps, 42 Ariz. 222, 223, 23 P.2d 937, which was a mandamus action to compel the superior court to hear an appeal from the justice court, we stated:

" \* \* \* it seems to be conceded that, \* \* \* mandamus to compel the court to take jurisdiction and proceed with the trial of the case is the proper remedy. \* \* \*"

However, it is our view that this rule would only apply where, as here, there was no other adequate means of relief open. Obviously with the general election only twenty days away the petitioner had no other plain, speedy or adequate remedy available to him.

For the reasons stated the alternative writ of mandamus theretofore issued was made peremptory.

PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.

WINDES, Justice (specially concurring).

I concur in the result declared by the majority but prefer to briefly set forth my reasons for such result. I agree with the majority that the legality of primary elections for Congress is a matter of state and not Federal concern. Newberry v. United

States, 256 U.S. 232, 41 S.Ct. 469, 65 L.Ed. 913. The problem for solution is whether the legislature has made provision for contesting such primary elections. My view is that the history of legislation on the subject provides the answer.

When Arizona was admitted to statehood and its constitution adopted, the legislature was directed to enact a direct primary law providing for the nomination of all candidates for elective offices, including representatives in Congress. Art. 7, section 10, Arizona Constitution. The first legislature of the state enacted a direct primary law which included nominations for Congress. The 1913 Code, Title 12, Chapter XIV, confers the right and prescribes the procedure for contesting a general election and the last section of this chapter (section 3070) reads:

> "Primary elections may be contested in the same manner and within the same time as provided in this chapter for county elections."

Clearly this section confers the right to contest as to any and all primary candidates. No exception is made as to nominations for Congress. Section 3041 of the 1913 Code provided as follows:

> "All contests arising out of such primary elections shall be settled and decided in the same manner as is now or may hereafter be by law provided for general elections."

This section provided the procedure for settling and deciding all primary elections. It is clear that the 1913 Code conferred the right and prescribed the procedure for contesting all primary elections which of course would necessarily include congressional candidates.

This dispute is engendered by some slight subsequent changes by the legislature. If these changes reflect an intention on the part of the legislature to eliminate the right to contest all primary elections, respondent was correct in her ruling dismissing the contest. On the other hand, if no such intention is evident, the lower court erred.

The first change occurred in the 1928 Code, fifteen years subsequent to the original enactment. Of importance is that the 1928 Code eliminated section 3070 and the word "all" in section 3041 of the 1913 Code. We have held that when a word, a phrase or a paragraph of the 1913 Code was omitted in the 1928 Code we will presume no change was intended in the substantive law unless such change was the only conclusion which could be drawn. In re Sullivan's Estate, 38 Ariz. 387, 300 P. · 193, 195. Therein we said:

> " * * * It is well known that it was the object of the code commissioner and the Legislature in preparing the Revised Code of 1928 to change the legal meaning of the existing law as little as possible, but, as stated in the ·

preface to the official edition of said Code, 'to reduce in language' and to avoid redundancy. Chapter 35, Session Laws 1925. We should therefore presume that when a word, a phrase, or a paragraph from the 1913 Code is omitted· from the Code of 1928, the intent is rather to simplify the language without changing the meaning, than to make a material alteration in the substance of the law itself. Of course, if the only conclusion which can be drawn from the new language is that it was intended to change the legal effect of the statute, the latest expression of the will of the Legislature must prevail, but where two meanings can be given, we should assume rather that one which leaves the law as it was originally than the one which changes the legal effect of the statute as well as its phraseology."

Candidates for Congress in the primary election are subject to the same laws as state or county candidates concerning the manner of being nominated and the purity of such primary elections. It is inconceivable that by the minor deletions heretofore mentioned the legislature intended to exempt congressional candidates from the penalties provided in these laws. It is difficult for me to attribute to the legislature the unreasonable intent to prescribe how these candidates can legally be nominated and eliminate the right theretofore given to question the legality of the nomination. We should presume otherwise. The only reasonable conclusion which can be drawn from the aforementioned deletions is that the legislature did not intend such an important substantive change.

The alternative writ of mandamus should be made peremptory.