342 P.2d 201

William Ralph GRIFFIN and John Joseph Hourihan, individually, and in the right and on the behalf of the electors and members of the Democratic Party of the State of Arizona and in the right and on behalf of the citizens and electors of the State of Arizona, Appellants,

v.

A. P. (Jack) BUZARD, Appellee.

No. 6776.

Supreme Court of Arizona.

July 15, 1959.

Rehearing Denied Sept. 22, 1959.

John E. Madden, Phoenix, for appellants.

Lewis, Roca, Scoville, Beauchamp & Linton, and John P. Frank, Phoenix, for appellee.

UDALL, Justice.

This is an appeal from a superior court judgment dismissing statement of a primary election contest filed against A. P. (Jack) Buzard (contestee-appellee) by two qualified electors, William Ralph Griffin and John Joseph Hourihan, (contestors-appellants). The parties will hereafter be referred to as contestors and contestee.

No one challenges the right of contestors to bring this contest, as A.R.S. § 16-1201 specifically provides:

"A. Any elector of the state may contest the election of any person

* * * declared nominated to a state office at a primary election, * * *."

At the outset it is well to note the settled rule in this state is that "election contests are purely statutory, unknown to the common law, and are neither actions at law nor suits in equity, but are special proceedings." See, Harless v. Lockwood, 85 Ariz. 97, 332 P.2d 887, 888; Brown v. Superior Court, 81 Ariz. 236, 303 P.2d 990; Grounds v. Lawe, 67 Ariz. 176, 193 P.2d 447; Cf. Henderson v. Carter, 34 Ariz. 528, 273 P. 10. The right of appeal to this court is provided for in A.R.S. § 12–2101, subd. B.

Among the various candidates seeking nomination under the Democratic banner at the statewide primary election held September 9, 1958, were three candidates for the six-year (long) term on the Arizona Corporation Commission, viz.: William A. (Bill) Brooks, William T. (Bill) Brooks, and contestee A. P. (Jack) Buzard. The latter, according to the official canvass, received the highest number of votes cast,— was declared to be the Democratic nominee for such office and was issued a certificate of nomination therefor. Incidentally, from a companion case, 342 P.2d 206, it appears Buzard was unopposed in the general election hold November 4, 1958, and since the first of this year has been and now is serving as a Corporation Commissioner.

The contestors, on October 20, 1958, brought this contest on behalf of themselves and as a class action for the citizens and electors of the State of Arizona, all of whom are allegedly "interested in and entitled to the insurance of freedom and purity of elections in the State of Arizona." The contestee on October 22d moved to dismiss the statement of contest upon the grounds (a) that the same failed to state a claim upon which relief could be granted to the contestors, and (b) that William T. (Bill) Brooks is an essential party contestor and had not been so joined. The motion to dismiss was granted by minute order dated October 27th, and judgment entered thereon the next day, from which judgment this appeal was taken on November 3, 1958. Inasmuch as the trial court did not specify the basis for its order and judgment we shall assume it is predicated upon one or the other of the enumerated grounds.

First we shall dispose of the contention that candidate William T. (Bill) Brooks was an indispensable party to the contest and not having been joined therein as contestor, the action was properly dismissed. There is not the slightest merit to this contention. We point out that this is not a contest between two rival candidates, but rather an election contest initiated by qualified electors against contestee Buzard with the purity of elections as its goal. The statutes, A.R.S. §§ 16–1201 to 16–1203 inclusive, give the answer as to who must be parties to such an action. We hold the only necessary parties were the named contestors and contestee, Buzard, the party whose nomination was being contested. The statutory form of summons set forth in A.R.S. § 16–1203 bears out this conclusion. The fact that this contest, if successful, might inure to the benefit of William T. (Bill) Brooks is of no moment in determining the question of whether he is an indispensable party to the suit.

In contestee's brief the further argument is advanced that because of certain alleged defects in the primary nomination papers of William T. (Bill) Brooks—which are detailed in Smoker v. Bolin, 85 Ariz. 171, 333 P.2d 977—the said Brooks was not himself a legal candidate for the office which he sought and hence it is asserted the conduct complained of by the contestants herein is of no legal significance. The logic of this claim escapes us. Obviously, the contention that there may have been another illegal candidate in the race hardly avoids the effect of statutory grounds of contest, nor defeats the allegations found in the complaint, infra, that deception was practiced and the true will of the electorate could not be ascertained.

The ultimate issue raised by this appeal is whether the statement of contest filed herein states a claim upon which relief could be granted, for if it does the trial

court was in error in dismissing same. In resolving this issue there are certain well established rules to guide us: (1) in determining sufficiency of complaint (in this instance statement of contest) on a motion to dismiss, the allegations must be treated as true, and whether they are susceptible of proof at the trial does not concern us at this time, State v. McCarrell, 80 Ariz. 243, 295 P.2d 1088; (2) all intendments lie in favor of the pleading and not against it, In re Cassidy's Estate, 77 Ariz. 288, 270 P.2d 1079; and (3), a motion to dismiss an action should never be granted unless the relief sought could not be sustained under any possible theory. Marston v. Denton, 60 Ariz. 178, 134 P.2d 158.

Before proceeding to analyze the allegations contained in the statement of contest we deem it advisable to set forth the pertinent constitutional and statutory provisions that have a bearing on the matter. The authority for holding a primary election stems from article 7, section 10, Constitution of Arizona, A.R.S.:

*Direct primary election law*

"The Legislature shall enact a direct primary election law, which shall provide for the nomination of candidates for all elective State, county, and city offices, * * *."

Another constitutional provision having a bearing upon our problem is found in section 12, article 7, which reads:

*Registration and other laws*

"There shall be enacted registration and other laws to secure the purity of elections and guard against abuses of the elective franchise."

In obedience to these mandates the legislature enacted A.R.S., Title 16, Elections and Electors, which includes chapter 5, entitled Primary Elections; chapter 9, Contest of Elections; and Chapter 10, Penal Provisions.

The relevant statutory provisions are as follows:

"A.R.S. § 16–505:

"Contests arising out of primary elections shall be brought and determined in the same manner, as nearly as possible, as provided by law for contests of general elections."

*Chapter 9, Contest of Elections*

"A.R.S. § 16–1201. Contest of state election; grounds; venue.

"A. Any elector of the state may contest the election of any person declared elected to a state office, or declared nominated to a state office at a primary election, * * * upon any of the following grounds:

\* \* \* \* \* \*

"2. That the person whose right to the office is contested was not at the time of the election eligible to the office.

"3. That the person whose right is contested, or any person acting for him, has given to an elector, inspector, judge or clerk of election, a bribe or reward, or has offered such bribe or reward for the purpose of procuring his election, *or has committed any other offense against the elective franchise.* (Emphasis supplied.)

"4. On account of illegal votes. * * *"

### Chapter 10, Penal Provisions

"A.R.S. § 16-1303. Coercion or intimidation of elector; penalty.

"A. It is unlawful for a person:

"1. Directly or indirectly, * * * by himself or through any other person, * * *.

"2. By abduction, duress *or any forcible or fraudulent device or contrivance whatever, to impede, prevent or otherwise interfere with the free exercise of the elective franchise of any voter,* * * *." (Emphasis supplied.)

"A.R.S. § 16-1307. Changing vote of elector by corrupt means or inducement; penalty.

"A. It is unlawful for a person by force, threats, menaces, bribery, or any corrupt means, either directly or indirectly:

* * * * * *

"3. *To defraud an elector by deceiving and causing him to vote for a different person for an office* * * * than he intended or desired to vote for. (Emphasis supplied.)

"B. A person who violates any provision of this section is guilty of a felony."

From a reading of contestors' statement of election contest it is apparent that the contest is based upon subdivision A, pars. 2, 3, and 4 of section 16-1201, supra, coupled with alleged violations of the penal provisions contained in A.R.S. §§ 16-1303 and 16-1307, supra. It may be briefly stated as: (a) the commission by contestee of offenses against the elective franchise, to wit: "the impeding, preventing and interfering with the free elective franchise of the voters by fraudulent device or contrivance" and "the defrauding of electors by deceiving and causing them to vote for a different person for an office than they intended or desired to vote for"; (b) the ineligibility of contestee to hold the office for which he was purportedly nominated because of his commission of aforesaid offenses against the elective franchise; and (c) on account of illegal votes which were cast in such numbers as to permeate said election with illegality and fraud and make it impossible to ascertain the true election results, thus rendering said election void and invalid in so far as the office in question is concerned.

In support of these ultimate fact allegations, the statement of contest may be summarized as follows:

1. The introductory paragraphs state the jurisdictional facts and identify the contestors as qualified electors. It is alleged this is a class action and that the contestors are members of the Democratic Party.

2. Succeeding paragraphs identify this particular primary election and set forth the total votes cast for the three Democratic candidates for the office in question as shown by the official canvass thereof, viz.:

| | |
|---|---|
| William A. (Bill) Brooks | 26,547 |
| William T. (Bill) Brooks | 48,988 |
| A. P. (Jack) Buzard | 56,799 |

3. Alleges that William T. (Bill) Brooks from 1932 to date, by virtue of political campaigning, the holding of public offices and the compiling of a record in public office, by 1958 had attached to himself and his said true name, political good will, and he and said name had acquired a secondary meaning in so far as the voters of the state were concerned. That contestee, and others described in the contest, knowing this political good will and secondary meaning made Buzard's chances in said election negligible, in violation of A.R.S. §§ 16-1303 and 16-1307, devised and contrived the scheme whereby the name of a party known as "Brooks" would be entered into the race so as to "palm off" said "Brooks" on the voting public as "William T. (Bill) Brooks" and confuse the voters and thereby split or divide the vote at said election that otherwise would be drawn by the true William T. (Bill) Brooks and said political good will and secondary meaning attached thereto, all to the end that contestee would thereby be elected. It alleges that these parties importuned one "W. A. Brooks", who had never before been a candidate for public office, who was not eligible for the office to which he was purportedly a candidate, and who previously had not generally been known as "William A. (Bill) Brooks" to permit the use of his name as a diversionary candidate. By means of nominating petitions purporting to nominate said "Brooks" as "William A. (Bill) Brooks", said parties succeeded in having the said "Brooks" appear on the ballot for said election as "William A. (Bill) Brooks". Thereafter, by said device and contrivance in violation of aforesaid criminal statutes, and notwithstanding the lack of any campaign effort of any substance by said "Brooks" or the raising of any issues that would distinguish this unknown, said "Brooks" was, as planned, "palmed off" on voters in excess of 25,000 as the true "William T. (Bill) Brooks", the vote for the true William T. (Bill) Brooks split, and the voting public so defrauded and deceived as to nullify said election.

The essence of the prayer was that the Court set aside the nomination of contestee and decree it to be illegal, void, and of no force and effect, and that the name of A. P.

(Jack) Buzard be stricken from the ballot as the Democratic candidate at the general election.

■■ We are of the opinion that when the allegations of the statement of contest are compared with the statutes quoted herein that contestors have stated a valid election contest under section 16–1201, supra. It must be remembered that this election contest is not a criminal action against contestee and the high degree of proof required to convict is not essential. It is not uncommon to find allegations in civil action complaints that charge defendants with a violation of a criminal statute.

While this is a matter of first impression in this state, we do find in reported cases from other jurisdictions—even though they may have had no corrupt practice acts such as ours—that the courts have consistently frowned upon the fraudulent device or contrivance of running a diversionary candidate of the same or a similar name such as is here alleged. See, Elder v. Mall, 350 Ill. 538, 183 N.E. 578; State ex rel. Johnson v. Marsh, 120 Neb. 297, 232 N.W. 104; Seymour v. United States, 77 F.2d 577; Murray v. Murray, 7 N.J.Super 549, 72 A. 2d 421.

■ Finally we consider contention of contestee that the statement of contest— even though filed within the statutory period—is brought too late. The argument advanced is the alleged deception of the electorate by the use of a name of a mala fides candidate was well known as early as July 1958 and that hence such matter should have been attacked before the Primary Election and that a failure to do so prevents contestors from now being heard on their election contest. We do not deem the authorities cited in support thereof, Kerby v. Griffin, 48 Ariz. 434, 62 P.2d 1131; McLoughlin v. City of Prescott, 39 Ariz. 286, 6 P.2d 50, and Renck v. Superior Court of Maricopa County, 66 Ariz. 320, 187 P.2d 656, to be in point. Were this contention correct then the statutory provisions governing primary election contests would be nugatory. We hold there is no merit to it. Furthermore we are of the opinion that the holding of the subsequent general election does not operate to make the issues here presented moot. Cf. Harless v. Lockwood, supra.

■ The courts must be alert to preserving the purity of elections and its doors must not be closed to hearing charges of deception and fraud that in any way impede the exercise of a free elective franchise. The contestors are entitled to an opportunity to prove their charges. The judgment of the lower court is reversed with directions to reinstate the election contest and proceed to trial.

Judgment reversed with directions.

PHELPS, C. J., and STRUCKMEYER, JOHNSON and BERNSTEIN, JJ., concur.